Bowman v. The St. Louis Times.

BOWMAN, *Appellant,* v. THE ST. LOUIS TIMES *et al., Appellants.*

1. The finding of the trial court that certain notes, secured by a deed of trust, were held by the maker, as agent of the owner, and had not been paid, affirmed.

2. Note: POSSESSION BY MAKER. The fact that a note, after having been put into circulation by the maker for value, comes into the hands of the latter as an agent of a third party, will not defeat recovery thereon by the latter.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*John M. Dickson* and *H. I. D'Arcy* for Chambers and Buchanan, appellants.

(1) The application for a receiver and injunction

should have been dismissed at the preliminary hearing, because the petition admitted that the trustee was then in possession of the mortgaged property, and did not state one specific act of illegality or fraud on the part of the trustee. High on Receivers; *Cabanne v. Liza*, 1 Mo. 682; *Jenny v. Spedden*, 38 Mo. 295; Bispham's Pr. of Equity, 459; *Southwestern Ry. Co. v. Brigden*, 3 McN. & G. 23; *Hoare v. Bainbridge*, L. R., 8 ch. 22; *Conover v. Mayor*, 25 Bart. 513; *Crane v. Bonnell*, 10 Paige, 333; *Simpson v. Hart*, 1 Johns. 97. (2) The court erred in not dismissing the bill, on the hearing, as there was no evidence tending to show fraud or negligence on the part of the trustee, while all the evidence on that subject showed that he did what he was directed to do, and what, under the trust deed, it was, after default for five days, his duty to do. The vendee of the mortgageor could have no greater right to possession than the mortgageor, and the provisions of the latter's deed of trust expressly deprived him of any, under the admitted default. The appointment of a trustee was for the very purpose of preventing a part of the beneficiaries from defrauding the others. And it was solely because he was endeavoring to do this that his removal was sought. *Myers v. Estell*, 48 Miss. 401–4; *Fay v. Ford*, 38 Ark.; *Johnson et al. v. Houston et al.*, 47 Mo. 227–30. (3) The bill should have been dismissed at the hearing, and the plaintiff ordered to pay to the trustee the difference between what the property brought and what it would have brought, but for plaintiff's fraudulent destruction of it. Equity will not actively interfere to aid one who does not exhibit "perfect propriety of conduct." 2 White and Tudor Ld. Cas. in Eq., pt. 1, p. 936, and cases cited; Sto. Eq. Pl. (9 Ed.) sec. 426, and note; *Corbey v. Bean*, 44 Mo. 381; *Real Estate Savings Ass'n v. Call*, 63 Mo. 290; *Foster v. Hughes*, 57 How. (N. Y.) Pr. 20; *McDaniels v. Lee*, 37 Mo. 267; 31 Mo. 147. Nor, to aid a mere speculator in his oppression. *Edwards*

*v. Alloney M. Co.*, 38 Mich. 46. Nor *a fortiori* where the plaintiff has actively, intentionally and unfairly, brought about the very state of things on the existence of which he bases his claim for equitable relief. 2 White and Tudor Ld. Cas. pt. 1, p. 999.

*F. J. Bowman pro se.*

(1.) The answers of defendants set forth no affirmative facts, which, if true, would constitute a defence to this action. (2) The entire evidence sustains the findings of the lower court. (3) A promissory note has no legal inception until it is delivered to some person as evidence of a subsisting debt. Edwards on Bills and Notes, 186; Daniel on Neg. Inst. 63. In order that a note may be held as an escrow, it must be delivered to a third person. *Jones v. Shaw*, 67 Mo. 670; *Massman v. Holscher*, 49 Mo. 87; *Henshaw v. Dutton*, 59 Mo. 139. (4) The conveyance of Chambers to the St. Louis *Times*, was made *subject to the incumbrance then existing upon the property*, but this conveyance created no obligation on the part of the *Times* corporation to pay the notes. *Heim v. Vogel*, 69 Mo. 529; *Swope v. Leffingwell*, 72 Mo. 356. The notes were the notes of Chambers; they were payable at his option; the $23,333.33 ⅓ of notes in question had been paid, taken up, and were held by him when this suit was filed, and no portion of the proceeds of the sale of the mortgaged property should have been applied in payment of these notes. (5) The court below passed upon the question of the compensation of the trustee and his attorney, and determined the amount, and this court will not disturb such a judgment, unless there is shown a positive abuse of the court's discretion, which does not appear from the record.

*S. B. Gordon* for Donovan, trustee, appellant.

(1) The trustee in a deed of trust is a trustee for the

debtor, and it is the duty of the trustee to protect the interests of the debtor in the trust property. *Stoeffel v. Schroeder*, 62 Mo. 147, 149 ; *Graham v. King*, 52 Mo. 22, 24 ; *Chesley v. Chesley*, 49 Mo. 540, 541 ; *Carter v. Abshire*, 48 Mo. 300, 303 ; *Judge v. Booge*, 47 Mo. 544, 549 ; *Richard v. Holmes*, 16 How. 143, 149. (2) The trustee is entitled to compensation for his time, labor and services. 2 Perry on Trusts (3 Ed.) p. 564, sec. 917 ; 2 Story Eq. Jurisprudence (12 Ed.) p. 522, sec. 1268 *a*, and cases cited ; *Meachan v. Stearns*, 9 Paige Ch. 398, 403 ; *Beverly v. Miller*, 4 H. and M. 415, 419 ; *Martin v. Barrett*, 22 Me. 257, 268. As a matter of right, not of discretion. Perry on Trusts (3 Ed.) p. 565, sec. 918, and cases cited in notes. (3) The trustee is entitled to reimbursement of his expenditures and fees of his counsel, out of the trust fund. Perry on Trusts, secs. 910, 913, pp. 558, 561, and cases cited ; *Sherwood v. Saxton*, 63 Mo. 78. (4) The trustee is entitled to a lien upon the trust fund for his compensation and expenditures, and his lien is prior to that of the holders of notes secured by the deed of trust. Perry on Trusts, p. 555, sec. 907, and cases cited ; *Jones v. Dawson*, 19 Ala. 672, 675 ; *Darker v. Williamson*, 25 Beav. 622.

BLACK, J.—On the eighteenth of May, 1877, B. M. Chambers purchased the lease, machinery, fixtures, telegraphic privileges, and other property of the St. Louis *Times* newspaper, and on the same day conveyed the property thus acquired to the defendant, Donovan, in trust, to secure some principal notes aggregating fifty thousand dollars, and interest notes maturing semi-annually. The notes were made payable ten years after date, or sooner, at the option of the maker. These notes were delivered to persons holding indebtedness against the *Times*, and in payment of the property so purchased by Chambers. A stipulation in the deed of trust is that in case of default in the payment of any of the interest notes, then

all of the notes shall become due. "The St. Louis *Times*," a corporation, was subsequently organized, became the owner of the property subject to said deed of trust, and continued the publication of the newspaper. The plaintiff purchased and became the owner of about one-half of these notes, secured by the deed of trust, and default having been made in the payment of the interest note, he commenced suit in the St. Louis circuit court on the fourth of January, 1881, to foreclose the deed of trust. The petition also prayed for an injunction and the appointment of a receiver.

A receiver was appointed and directed to continue the publication of the paper for the time, and the other defendants were enjoined from publishing a paper under that name, and the trustee was enjoined from further advertising the property for sale under the deed of trust. The property was sold by the receiver, by order of the court, on the eighth of February, 1881, for $24,550, and the sale was duly confirmed. On final hearing the injunction was made perpetual, and the deed of trust foreclosed. The court found that plaintiff owned principal notes to the amount of $28,666.66, and the defendant, Anna M. Buchanan, owned the remainder, amounting to $21,333.33. In other respects the decree was in accordance with these findings.

The defendants, Anna M. Buchanan and the trustee, Donovan, filed long answers, and a vast amount of testimony was taken, disclosing the history of the newspaper and its troubles. Much of the evidence tends to show that the plaintiff acquired these notes and other debts in order to get control of the paper. The fact, however, remains undisputed that he became the legitimate owner of the notes, and that default was made in the payment of the interest thereon. He, therefore, had a perfect right to foreclose the deed of trust. The foreclosure of the deed of trust by proceedings in court upon property of the character of that here in question, and

the complications surrounding the property, which we need not stop to detail, made the appointment of a receiver entirely proper. The plaintiff became the purchaser of the property, and he controverts the right of Mrs. Buchanan to share in the proceeds of the sale, and hence he appealed. This contention is based upon the alleged ground that the notes claimed by her, to-wit, one for $18,666.66, and two, each for $1,333.33, were really held and owned by B. M. Chambers, and should be treated as paid. Mrs. Buchanan is a widow lady living out of St. Louis, and the evidence shows that Chambers held in trust for her and her children ten thousand dollars, by virtue of the last will of her husband. She and her children also received twelve thousand dollars insurance money, as it is called. This was also placed in the care of Mr. Chambers for investment, though Mrs. Buchanan was also accountable for five-sixths of that money, as the guardian of her children. Mr. Chambers testified that out of these funds he took up and held for Mrs. Buchanan the two notes of $1,333.33 each, early in the history of the deed of trust in question. He also states that the note for $18,666.66 was originally turned over to the Butchers' & Drovers' Bank, in lieu of the debts owing to it by the *Times* newspaper; that the bank owed his sister twenty-five thousand dollars, and when it became insolvent she took the note on account of her debt; that he subsequently borrowed the note from her and used it, and the two notes belonging to Mrs. Buchanan, as collateral security to a note of Fisher, who was interested in the *Times*, to raise money to carry on the publication of that paper; that in the spring of 1880 the large note was redeemed with money of Mrs. Buchanan, realized from the sale of certain script belonging to her, and that he has since held these notes for her, and as her property.                    •

This evidence, aside from the suspicion naturally attached to it, is not disputed. It is also supported to

some extent by the evidence of Mrs. Dixon, and some other circumstances in the case. It is also clear that Chambers had in his hands the moneys of Mrs. Buchanan, and that she knew a part of it, at least, was invested for her in these notes. The conclusion, therefore, is that the notes were thus acquired with her money, and for her, though Mr. Chambers did make the unwarranted use of two of them. Now, it is true these notes were never actually delivered to her, but they did come to the hands of her agent after they had been put in circulation by the maker for value, and the fact that her agent was also the maker of the notes will not defeat her recovery here. Plaintiff was not misled by her, or anything done in her interest, and knew these notes were also secured by the deed of trust.

The trustee, Donovan, took possession of the paper, or, at least, a part of the property, on December 31, 1881, and held such possession for eight or twelve days, until the receiver was appointed, having at the same time advertised the same for sale because of the unpaid notes held by Mrs. Buchanan. He filed a claim for over four thousand dollars for services, etc., and the court allowed him two hundred and seventy-five dollars, which, from his own testimony, we are satisfied was fair enough.

The judgment, from which all the parties appealed, is affirmed. All concur.